Good morning, your honors. May it please the court. My name is Alan Dickerson, appearing today on behalf of the Center for Competitive Politics, a non-profit educational charity. This year, the Center learned for the first time that as a condition of raising charitable funds in California, the Attorney General takes the position that charities must submit an unredacted copy of their IRS Form 998 to the state. Since the only difference between redacted and unredacted copy of that form are the names and addresses of significant contributors to charities, this policy has the effect of being a dragnet request for the donors of essentially every charity in the United States, since few of us can afford to forgo fundraising in the most populous and wealthy state of the United States. This raises two problems. The first is that it violates the right to associate in private what the Supreme Court in NAACP v. Alabama called the right of members to pursue their lawful private interests privately and to associate freely with others in so doing. As importantly, the Attorney General will gain little to nothing from this violation of privacy. While no mechanism or significant argument was made in district court as to the Attorney General's need for this information, on appeal, five reasons were given. In each of these cases, the existing unredacted copy, or pardon me, the existing public copy of Form 990 includes the relevant information the Attorney General would require. Those five issues are, first of all, whether a donor is an officer or director. Form 990, page 7, section A, lists the names and compensation of officers and directors. It's not clear from the Attorney General's briefing the relevance of donor stenalysis. The second is whether interested persons, as that term is used in California law, are being compensated in violation of that law. Form 990, page 6, part 6, section A2, this is a lengthy form, lists interested persons. The third is whether there has been self-dealing with a corporation as a party and one or more directors as material financial interest. Part 7, section A, requires directors to list compensation from related organizations. Part 4, number 28, requires arrangements between the corporation and its directors, their family members, and entities they control. All this information is included on Schedule L of the 990. The fourth is whether loans are made to directors or officers. Part 10, section on liabilities, number 22, lists such loans. Grants or other assistance is listed at part 4, number 27. Part 4, number 26, lists receivables from or payables to any current or former officers. That, again, is listed on Schedule L. The final point was whether or not unfair business practices are being conducted. And again, we're left with no mechanism as to how. Let's go back to the beginning. You start off by saying that this requirement of having to attach an unredacted schedule, Schedule B? Schedule B, as in Bravo. To the return, or to the report that has to be filed basically would discourage any donor from, many donors. I'm not sure. In your brief, there's no evidence that that, in fact, is the case. I think that's in a large measure what's going on. What's theLast point is that in some ways the state and the Senate are talking passing check. Our view is that as a matter of law, the compelled disclosure of donors to a nonprofit organization is a first amendment. What's your best case that says that just the fact of the disclosure requirement is violated? All right, I think our first, our best case is probably, probably the Perry case which says that, uh, well there's two Perry arises, arose in a different context, correct? Most of the cases here arose in a different context. Perry case dealt with the discovery. Right, is that right? All of, all of the cases the state has cited that require, that require a prima facie showing of harm before we reach the state's burden to justify a disclosure requirement. All of those cases come in some sort of adversarial proceeding, whether it's a discovery question or it's a lawfully issued subpoena. As I understand, as I understand your argument, and please correct me if I'm wrong. I'm not sure what you're talking about. No, I don't think that's what you're talking about. We're serious. It's just that every instance, this compelled disclosure violation is violated? First Amendment right of association? Not quite. We're saying that the Supreme Court has said that the dangers to the right of association from compelled membership and donor disclosure are so high and so obvious that the state must justify its request under exacting scrutiny. So I think that's the first piece of the puzzle, is we know that harm is presumed because heightened constitutional scrutiny applies. That's the first bit. The second is that... I think there's two responses to that. No. Although, as a threshold matter, I would point out, and I imagine Your Honor is getting to the Buckley decision, which I'm happy to discuss. The threshold issue is that, of course, we're talking about 5-1C3 organizations prohibited by Federal law from any political activity. So we're as far as is humanly possible from the political line of cases. We would lose our tax status, and there might be criminal penalties if we were to try that. The other issue is that, you know, Buckley, again, is one of these cases that does not require the sort of factual showing that Your Honor just suggested. Buckley is a facial challenge. And Buckley says NAACP is very... I think it can be most reasonably read that way. I mean, our view, again, is that, you know, we're here on a preliminary injunction. If you look at the complaint, it doesn't change anything. It says it's a quiet complaint. How do you transform that into a patient complaint? I'm not sure it makes an enormous amount of difference in the sense that, in either case, the burden's on the state to meet exactly scrutiny. Exactly scrutiny requires some balance. It does, absolutely. And much of our... There's nothing... I mean, I might think twice. You know, something like, I might even think twice about whether I want to do this because... And even though it's allegedly confidential, there's... Therefore, I'm not... I'm going to have to rethink my giving. There's nothing like that in this record. No, there isn't. And I think the center of our argument is that there doesn't need to be because the burden of persuasion is on the state. The harm is presumed. If you look at the Acorn Investment case, it says this extremely clearly. It says that even content-neutral disclosure is unconstitutional. It will stop unless the state bears its burden of showing the relationship. The balancing that happens under exacting scrutiny isn't how badly are you harmed and how badly are you harmed. The balance is what is the state's interest and does this bear a reasonable enough relationship to that interest. I don't just think that this judge didn't make that analysis. That's the thing. If I read it, it would have to be taken spatially. It would have to be analyzed under an as-applied standard. In other words, the argument is that you don't have to apply it. Because no one came to me and said, you know, there are folks out there... Isn't that the standard? I think I'm not... I may not be following, Your Honor. It sounded to me like your question was almost a question of standing. I think that's exactly right. And, you know, that's essentially our point. The NAACP court anticipated this. In order to get to the as-applied, having said, the circuit, going through this one, or going through it myself, then you have to come up with a plan. In other words, you have to find someone that's threatening you. You have to find someone that's afraid. And you don't have anybody. You don't have a plan. Well, we do have a plan in the sense that associations... Associations, but they're not threatening. I mean, they're the ones out there just trying to get by. But they don't know what they're asking. I mean, they're just... They're out getting money. That would be a facial test. That is... That's a facial test. This statute, on its face, is unconstitutional for everybody. In order to get to the analysis of this judgment, you have to have a reasonable probability that it's focused on Obama, that disclosure of his contributor's name is objectively correct. Right. And... And you don't have a claim of that ever occurring. So I think there's two responses to that. One is the NAACP court anticipated this. It said, look, if you were to say that the mere disclosure of your donors to the state... And I would never conflate the two governments, but that was a case where the Attorney General of the state of Alabama brought an action based upon a corporation's code. And the NAACP said, you can have everything but our donors. Everything else, we're happy to give you, which is precisely our position here. What the Supreme Court said there, unanimously, was, look, if your constitutional harm, if your claim is, you have no right to our donors or no right to our members, then requiring one of those members or donors to come into court and say, well, I'm going to stop giving or stop affiliating, that's to extinguish the right at the moment of its assertion. I think that's a direct quote. And I think that's precisely what's going on here. And that leads to the second point, which is that that line of, you know, you need to have this prima facie showing, that doesn't come out of these sort of dragnet requests. This doesn't come out of an attempt to build a database of every significant donor in the United States. It comes out of cases where, and, you know, the Brock and Dole cases say this. This is a situation where the union is trying to avoid a lawful government investigation. And the same with Perry, where there was a lawful request under the federal rules of evidence for information. And then we're in a very familiar district court situation of balancing whether the need for that to the litigant is acceptable. And that was my question. Did this judge do the balance? I think the judge made two errors. One was that, and maybe I'm not understanding which balance Your Honor is referring to. Maybe I don't know the way to frame the question. Was the balancing task applied in the district court situation? Or did the district court look at it as an applied case that you had in front of you? I believe that, I don't think the question of whether it was facial or as applied was terribly relevant. The judge read the Brock and Dole cases as stating that as a matter of Ninth Circuit law, you cannot get into court to challenge this sort of disclosure regime, unless you can show individualized, particularized harm. Well, he relied upon the warrant. Yes, exactly. And we don't think that's applied. That doesn't seem to be a really good case. That's exactly our position. And our position is, if that is not true, if we don't have to come in with that. But as I understand Judge Quist's inquiry, it's that once you get into exacting scrutiny, and double-acting, it's not happening. It's, I don't think there is a case that says that simple, and maybe I'm wrong, but I've never heard of a case that says that. You said there's a presumption, essentially, of meeting the exprimation cases, because it's self-disclosure. That's our view. That's your view. And I'm not sure the case is simple. Well, so my understanding is you have to look at it as applied. So when you look at it as applied, you have to look at something. You've got to have some harm. You've got to present something. And here, you really don't present anything, other than what's required. So then when you look at, then the government has to come back with a compelling justification, whatever the exact formulation of that is for the government. They can come back and say, well, ah, we have law enforcement. They can go back and see what you're doing. Look at, balance it out, and they're not entitled to anything. But if your honors were to look at the Perry case, I think it's been cited by both sides, and I think it's because it's a very rich case. But a few of the things that it says are, you know, first of all, the district court, the parties, everyone agreed that the rank and file members of that organization were protected by the First Amendment. Full stop. They didn't do an analysis of whether or not those people were going to be locked. They just said, yes, obviously, members of an organization are protected. And then it goes on to say, you know, there was something in the record. I can't deny that. But it also said that that, the stuff in the record lacks specificity. The Court of Appeals said that specifically. And then said, but that doesn't matter because the constitutional harm is so obvious in these sort of situations. Now I've got my notes in front of me. But for the exacting scrutiny test, you have to show a reasonable probability that disclosure of a contributor's names will subject them to threats, harassment, or reprisals from either government officials or private parties. Citizens United, actually. And that's the standard. But it's not clear how you can show that in this particular case. I agree that we have not shown that in this particular case. The distinction is whether or not we have to. And going back to Your Honor's question about Buckley, which... I don't think you have to name people for that. But I think you have to come up with a good rationale. Well, first of all, the government has to come up with a rationale. And then you have to say, well,  And that's exactly right. That the government has to come up with a rationale. And then you have to have some, you know, rational basis for that. And here, of course, they tell you, well, we're going to keep it secret. Nobody's going to know. The scope of the legal protections behind that assertion are curious. But back to the question of Buckley. Buckley, again, is a case where the threats, harassment, and reprisal language comes out of an exception to PAC status. It comes out of minor parties, minor political parties that exist for the purpose of political advocacy. The Buckley court had previously said, look, if what you do is politics, the people have a right to know who's funding you. And if you want to... So they've already done the exact scrutiny at that point in the case. They've said, as a facial matter, unless what you do is politics, your major purpose is the election of candidates, your donors don't come in, as a facial matter. That's a central holding of Buckley. And then later in the opinion, they say, oh, and if you are one of these major purpose organizations, you're a political party, and you don't want to give your donors, well, we've already decided that the statute is appropriately tailored to political parties, so you're going to have to show that there are threats, harassment, or reprisal dangers to your members. It's... The district court error, and it's easy to do, this is a very complicated area of the law, in putting that exception to a statute that had already passed exacting scrutiny as a threshold question for determining whether you decide exacting scrutiny. And that's the error. The error is in saying that, no, we're exacting scrutiny, which is a burden that is placed upon the state, precisely because the privacy of the association is such an important and central right. Uh, uh, Mr. Dixon, address this question to me, which I think hasn't been, uh, addressed too well. The reason, one reason this case is different from, say, Perry or, you know, NAACP, is that, as I understand the information you're arguing about, it's already disclosed to the IRS, right? That's correct. So... It's different than... So you're speaking of the additional harm that comes from disclosure to the Attorney General. Because the Attorney General is going to keep it confidential just like the IRS does. Now what's the... What's the harm in the additional disclosure? Isn't that different from all the other cases? Because it's already been disclosed once? That's an interesting question. I think it is. Um, yes. I think the answer are that there's always a constitutional harm when the State demands your donors and your members, period. And that the statutory structures are existing under. On one hand, we've got admittedly a sworn statement from a relatively low-level person at the Department of Justice saying, no, we'll keep this private. By the way, we'll keep this private by having the same people who missed the fact you'd been redacting this for five years make sure that this is kept private. Right. Leaving that aside. The IRS, Section 6103, which we haven't gotten to, and I'd like to reserve some time for rebuttal. You know, there are criminal penalties if this comes out. That's not true in the State of California. They've said we'll keep this private as a matter of policy. That could change tomorrow. They can't speak for the California Judiciary in an Open Records Act. But doesn't your injury come if the Attorney General changes the policy? There would definitely be an additional injury, and I would refer you... Additional? That's the first time you've changed it. Again, our view is that the forced disclosure of donors is a constitutional violation, and that, again, this isn't strict scrutiny. It's not that it's impossible. It's that the state has to show what it needs it for. And there has to be an appropriate relationship. And the reason that we believe we should have wanted a preliminary injunction is that the state simply didn't put any argument in the record. They simply said, we want this. It's law enforcement. Sit down. And that's not exacting scrutiny. With the court's indulgence, I'd like to reserve my time. Yes. Thank you. Still morning. Good morning, Your Honor. May it please the Court, I'm Alexandra Robert Gordon on behalf of Defendant Appellee Attorney General Harris. This is, as we know, a preliminary injunction. And plaintiff is trying to obtain the extraordinary remedy of enjoining the primary regulator of charitable organizations in California from obtaining a fairly limited amount of information. It is not dragnet. It is not unbounded. It is a request for the exact same information that is already on file with the IRS. The IRS keeps it confidential. And as the fairly high-level registrar of our registry has testified under oath, we keep it confidential as well. The counsel just mentioned that the IRS has a lot of, Congress has passed a lot of rules and regulations. Congress has. What is the disclosure? Is there anything similar like that here that guides the Attorney General? We have background rules in the civil code, Your Honor, that deal with the Information Privacy Act. I believe it's 1789, which deals with how state agencies handle confidential information. What makes it confidential? What makes this confidential? Information that is given to it in its law enforcement function. So we can't actually take people's personal information, and your name and address and how much money you're giving would certainly fall under that in the code. What do you mean? All the information the Attorney General gets is oversteer of the charitable trust. Is all confidential? No. Well, who makes it confidential? She does, doesn't she? She does. And that is the policy. This question goes to that. So, taking a step back, you are right. I suppose it is possible, although it has always been the AG's policy, which is the evidence in this case, to keep this information confidential. It is confidential now. The only evidence in this case is that this information is kept confidential. Should that policy change, we would have a different case. But that is not this case. Suppose some interested citizen asks for the Public Records Act, asks for this information under the State of California Public Records Act. That does happen, Your Honor. What's the response to that? The response is the information is never disclosed because under subsection K of the Public Records Act, information that is exempt from disclosure under either Federal or State law cannot be given out. This is, as we know, exempt from disclosure under Federal law under 6104. We do not give out that information. So there's no information in this record But this is information that the tax person This is information that was not provided to the IRS. It's information that was provided directly to the IRS. It is a copy of information that was provided to the IRS, yes, and then given. We ask for a copy of the form, an unredacted copy of the form that was given. Now, again, all of this would go to how is the least restrictive means of obtaining this information. It is, and the fact is that the only evidence in the record is that this information is kept confidential. It's very difficult to see, given that, what the harm is. Why can't you just ask them to produce it? Well, we could, Your Honor. So as I understand it, this didn't collect this information. Somehow or other it gets segregated out. It does. And in this particular instance, they didn't even notice that. Your Honor, we have 100,000 charities registered in California and a staff of 15. Okay. So why can't you just, when you need it, if there's allegations of criminal activity or improper propriety or improper self-feeling or violations of law by any person, why can't you just give them a subpoena? Here's what we want. Your Honor, we could. That is certainly an alternative. Why is that the least? Well, because it would have to be the least restrictive that's as effective. But really what I want to get back to is that when you're weighing the government's interest, right, the strength of it has to be determined by the burden on First Amendment rights. And really what's extraordinary about this case is that there's no burden whatsoever, zero evidence of any harm on plaintiff's First Amendment rights, and yet they want an injunction of legitimate law enforcement disclosure requirements. So I think, you know, we've gone through this. Under any articulation of the test, there's simply no case that I'm aware of in either the Supreme Court or the Ninth Circuit that says, if so facto, you want a disclosure of anything, particularly one that says, yes, you want a disclosure of the same information that we have been giving to the IRS that somehow does not appear to deter fundraising, right, even though the IRS has it and keeps it confidential. There is no case that says that that alone is sufficient. You don't get to enjoin a disclosure requirement simply because you don't like it, but you have no evidence. There are two main articulations of the cases of the tests that one applies to figure out whether or not a plaintiff has set forth an associational rights claim. If there's a facial challenge, I think the plaintiff says there's a facial challenge. Do you need to show those? Yes, you do. First of all, I don't think this is a facial challenge because Right. So plaintiff has actually made a point of this in his reply brief, the difference between a facial challenge and an as-applied challenge. The test is actually still the same. So when you look at Citizens United, for example, that's the as-applied challenge to those disclosure requirements. McConnell is the facial challenge. McConnell is very clear that it's applying the evidentiary standard set forth in Buckley, and it doesn't find that there's any evidence of harm. It does find a government interest. It, however, leaves open the possibility, as did Buckley, that an individual plaintiff, or there could be a group, that is going to be able to show harm. And so that, and Buckley is very clear that where harm exists, such as in cases as NAACP or Brown, plaintiffs have been able to make that showing of harm. But that showing of harm is always made. In Perry, for example, where we're talking about a very broad disclosure requirement where the discovery request is for internal campaign strategy documents, there was a showing of harm that entitled those litigants to a protective order. Here we have nothing. Absolutely nothing. Not one shred of evidence of harm. So whichever test we're using, whether it's the test that's set forth in Brock and Dole, which we would submit is the correct test, because this is such a limited disclosure request made in the context of the state exercising its regulatory function, there the plaintiff in the first instance has the prima facie burden to show harm through objective facts and evidence. They haven't done it. If we want to go to the exacting scrutiny test that's set forth in Protect Marriage or Doe v. Reed, this Court and the Supreme Court say under exacting scrutiny, the first question we ask is, is there a burden on First Amendment rights? Here the answer is no. And if we're balancing, right, if we're balancing the state's interest against harm and harm is zero, by definition, the state wins. And so really all of this discussion about, well, why couldn't we just wait until there was particularized suspicion? The state, the Attorney General, has determined that it's not as effective. That there's information in the Schedule B that helps connect the dots to all of the other schedules. Specifically, who's giving the information? How are they giving it? And I can tell you that a number of cases have been brought where the Schedule B has been instrumental. And having it before you actually have reason to believe that someone is engaging in illegality is more effective. Sorry? Right. So for example, a lot of the information that's given in the other schedules only reaches a certain level of, let's say, director and officer, interested persons. So really, one of the things that we're concerned is, is the charity really being, is it really functioning as a charity? And so when donors give to that charity, is it really so that the charity can engage in charitable purpose? Or are they funding basically lower-level staff, which all happen to be related to them? Right? We're also concerned with inflation of revenue. So if we look at a Schedule B and we see that, you know, John Smith has donated $2 million, which accounts for the majority of this charity's revenue, and it's in-kind. And we do a little bit more digging, and it turns out, yes, John Smith has donated a piece of artwork that John Smith gets a deduction for, and he values the $2 million. And it turns out, though, that that artwork was done by his six-year-old. And while it has tremendous value to him, it is not actually, in any objective sense, worth $2 million in revenue. This is useful to us to be able to connect dots to figure this out, because now we know that the IRS, we might not have been concerned with the fact that it's compensating its staff at $250,000 if it got $2 million in revenue. We're very concerned when it turns out that that $2 million disappears. So the information is useful. We have shown this. But again, our need to do so under any of these tests is extremely diminished. So discussion of, you know, how a plaintiff might prefer it, or would like it to be better, is simply not appropriate in the context of a First Amendment claim where they've shown absolutely no harm to their First Amendment rights. And it's very difficult to posit how there could be any First Amendment harm given that. And this is something that the Court said in Citizens United. Well, it seems that Citizens United has been able to fundraise for years successfully, despite this disclosure requirement. So we would say, as plaintiff has pointed out, charitable giving is alive and well in California, despite the fact that most of our 100,000 charities are disclosing this information, and despite the fact that plaintiff has given the same information to the IRS, it is still able to fundraise. There's simply no harm. It is... It has stayed pending appeal. Yeah. Was there any discovery? There has been no discovery. And that, you know, is important because going back, plaintiff will have an opportunity to actually come up with harm, and that will be relevant in the trial of the merits to whether or not it can state a First Amendment claim for violation of its associational rights, but in a preliminary injunction stage where it has an extremely heavy burden, it hasn't met it. It simply cannot prevail in the First Amendment. Would... I don't think I have anything further to say on the First Amendment. Yeah, there was a preemption argument that they raised, but it's not yet discussed. No. I mean, briefly, the District Court is absolutely correct that plaintiff cannot prevail on its preemption claim because the Internal Revenue Code section that it's citing, 6104, only applies to the IRS. It does not, as this Court has held in Stockwitz, which is controlling, despite the fact that Stockwitz talks about the confidentiality provisions in 6103, and we're talking about the exceptions to those confidentiality provisions in 6104. There's simply no evidence that there's something special about 6104 that Congress intended it to apply more broadly or that Congress actually was making a ban on anyone obtaining information about charitable organizations, least of all the chief regulators of charitable information. Again, I would just say, too, that sort of the dispositive point on that is that 6104 specifically incorporates the definitions of tax return and return information in 6103. This Court has already held that that only applies to information that passes through the IRS. Unless the panel has any other questions, I will probably hate myself after I sit down, but I am going to field the rest of my time. We would just ask that the panel affirm the District Court. Thank you. .
judges: Quist, Tashima, Paez